**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: August 12 2016

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| In Re: ) | Case No. 15-32135 |
| ) | |
| Greg Alan Nagel, ) | Chapter 7 |
| ) | |
| Debtor(s). ) | Adv. Pro. No. 15-03106 |
| ) | |
| Ericka S. Parker (Trustee), ) | Judge John P. Gustafson |
| ) | |
| Plaintiff(s), ) | |
| v. ) | |
| ) | |
| Greg Alan Nagel and ) | |
| Gary Nagel, ) | |
| ) | |
| Defendant(s). ) | |

### MEMORANDUM OF DECISION

This adversary proceeding is before the court for decision after trial on Plaintiff Trustee's Complaint to Recover Estate Property ("Complaint") [Doc. #1]. Defendants are the Debtor in the underlying Chapter 7 bankruptcy case, Greg Alan Nagel ("Greg Nagel"), and the Debtor's brother, Gary Nagel. Several aspects of the Trustee's Complaint were resolved prior to the trial on this matter. The remaining issues involved the ownership of two tractors, a 4010 John Deere Tractor and

a 4020 John Deere Tractor.[1]

The district court has jurisdiction over Plaintiff's underlying Chapter 7 bankruptcy case and all civil proceedings in it arising under or related to a case under Title 11, including this adversary proceeding. 28 U.S.C. §1334(a) and (b). The Chapter 7 case and all proceedings in it arising under or related to a case under Title 11, including this adversary proceeding, have been referred to this court for decision. 28 U.S.C. §157(a) and General Order No. 2012-7 entered by the United States District Court for the Northern District of Ohio. Proceedings to determine property of the estate are core proceedings that this court may hear and determine under 28 U.S.C. §157(b)(1) and (b)(2)(A), (E) and (O).

This memorandum of decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052. Regardless of whether specifically referred to in this Memorandum of Decision, the court has examined the submitted materials, weighed the credibility of the witnesses, considered all of the evidence, and reviewed the entire record of the case. Based upon that review, and for the reasons discussed below, the court finds that Defendant Gary Nagel is entitled to judgment on the Complaint.

## FINDINGS OF FACT

The parties do not dispute that Gary Nagel, the brother of the Debtor, had owned the two tractors in issue. Gary Nagel testified, and had documentation to support, that he had purchased the

---

[1] / There are minor errors in describing the tractors in various exhibits. The 4020 John Deere Tractor was listed as having been manufactured in "1960" in Plaintiff's Exhibit 12, page 40, when the actual year of manufacture appears to be 1969. The 4010 John Deere Tractor is listed as a "1961 410 Tractor" in the "Asset Description" column of Greg A. Nagel's 2013 Depreciation and Amortization Report. [Def. Ex. E, p. 29]. As discussed in more detail below, these errors do not appear to be material to the issues before the court.

4020 John Deere Tractor on or about September 25, 1987. [Def. Ex. A]. This tractor was used to farm the minimal acreage that Gary Nagel owned or farmed by agreement.

The second tractor in issue, the 4010 John Deere Tractor, was purchased by Gary Nagel in April of 2004. [Def. Ex. B]. This tractor, which is older and less powerful, had belonged to Greg and Gary Nagel's father. They had grown up using this tractor, and Gary Nagel testified that it had sentimental value to him. He testified that he used the tractor for one growing season, and then restored it to be a "show tractor".

The issue before the court is whether or not the two tractors were transferred from Gary Nagel to Greg Nagel, and therefore would be property of Greg Nagel's Chapter 7 bankruptcy estate. There is a third tractor, a John Deere 4040, which was previously determined to be property of Greg Nagel. The John Deere 4040 Tractor, which had been used in Greg Nagel's farming operations, was sold by the Chapter 7 Trustee in October of 2015.

At trial, the Trustee asserted that the two John Deere tractors were property of the Debtor at the time of filing. The evidence for this position consisted primarily of various tax returns the Debtor filed under penalty of perjury, showing the two tractors as being assets belonging to the Debtor. [Pl. Ex. 16, p. 16-2 ¶7; Pl. Exs. 17 - 20]. The Trustee also submitted a "receipt" dated "11-20-2010" bearing the number "232430" in the upper right hand corner. The receipt shows the name "Greg Nagel", with what had been his home address. The "description" lists one "1969 JD 4020 Tractor". The "price" is blank, but the "amount" is stated to be $14,000. [Pl. Ex. 14]. This "receipt" for the 4020 Tractor was part of tax-related documents that the Debtor's former spouse turned over pursuant to the Trustee's discovery request. In addition, one of the Amended Schedule B's filed by Greg Nagel included, as part of the list of equipment listed in response to question 33

"Farming equipment and implements", a "1961 John Deere Tractor ($10,000).". [Pl. Ex. 8, p. 7; Case No. 15-32135, Doc. #40, p. 7].

Weakening the position of Gary Nagel, that the two tractors were never transferred, is his failure to provide a complete copy of his 2011 federal tax return to the Trustee in response to her discovery requests. Without this factor weighing against Defendant, this would be an easy decision. The document which was not provided was the itemized depreciation and amortization portion of his 2011 return. Although the two tractors in issue would have been fully depreciated, tax preparer Randy Greisinger testified that the assets would normally remain listed, even if fully depreciated, until they are sold or otherwise disposed of. Specifically, Plaintiff's Exhibit 23, Schedule F, p. 23-5, Line 14 reflects a depreciation deduction of $6,000 taken on Gary Nagel's 2011 tax return. It appears that claiming this depreciation deduction would require the filing of a Form 4562, and that document was not included with Defendant Gary Nagel's copy of the 2011 tax return.[2] For the 2012, 2013 and 2014 tax returns, Schedule F does not reflect any deduction for depreciation on Line 14. The court does not find the copies of those returns to be incomplete based upon the documentary and testimonial evidence presented.

The problem for the Trustee's position is that it relies, in large part, on certain declarations Greg Nagel made under penalty of perjury. This is a problem for the Trustee because Greg Nagel signed a number of documents under penalty of perjury that were false. His Chapter 7 discharge has been denied based upon those false oaths.

Specifically, in filing his Chapter 7 bankruptcy, Greg Nagel stated in pertinent part, in his Statement of Financial Affairs, in response to Question 10: "Debtor owed $24,000 to his brother.

---

[2]/ Notably, a Form 4562 was provided with the 2004 tax return of Gary Nagel. [Ex. 8 attached to Pl. Ex. 27 "Deposition of Gary Nagel"].

In April, 2014 when Debtor quit farming, he gave all his farm equipment to his brother to satisfy the debt." Under oath, Debtor Greg Nagel testified about the transfer of the farm equipment, and provided the Trustee with a list of the transferred equipment. [Pl. Ex. 5, p. 5-2]. Debtor now admits that there was no debt for $24,000, and that he did not transfer his farm equipment to his brother prior to filing his Chapter 7 bankruptcy case. [Pl. Ex. 31-1, p. 25].

In amending Schedule B for the second time, a 1961 John Deere Tractor, valued at $10,000, was added to the list of assets. The declaration for the Amendment was signed under penalty of perjury. At trial, Gary Nagel asserted that he signed blank forms, and the "1961 John Deere Tractor" was added by his attorney without his knowledge.

The Debtor also now disavows certain information filed in connection with his 2010 to 2014 federal tax returns. For example, Gary Nagel claims that information in his 2011 tax return, which listed a "1961 410 Tractor" as well as the "1960 JD 4020 Tractor" on his Form 4562. [Pl. Ex. 17, p. 17-22; Pl. Ex. 31, p. 27-28], is not accurate. On the 2011 tax returns, the Debtor claimed a full value $10,000 deduction under "Section 179" for the 1961 410 Tractor, and had a depreciation deduction of $2,516 for the "1960 JD 4020 Tractor". The same tractors appear on Debtor's Form 4562 for his federal tax returns for 2012, 2013, and 2014.[3]

The Debtor testified that his former wife, Lory Nagel, had provided that information to the accountant in connection with the 2011 returns, and he had not noticed that the two tractors were listed until some time in 2015. Greg and Lory Nagel were divorced in 2012. [Pl. Ex. 11]. Debtor stated that he had wanted to look at his tax information, and that Lory Nagel would not let him. [Pl. Ex. 31, p. 15]. Despite his former wife's alleged actions in obstructing his review of his tax

---

[3]/ Only the "1960 JD 4020 Tractor" was listed on the Form 4562 filed with Debtor's 2010 federal tax returns.

5

information, which the Debtor apparently asks the court to find somewhat suspicious, those actions did not cause the Debtor (according to his testimony) to review his own tax returns, or the information that had been provided in connection with his tax returns, after his divorce. [*Id*.].

The court reviewed the deposition of Lory Nagel prior to the trial, and heard her testify. The court finds her testimony to be credible. She testified that she did not know much about farming, but that she knew there was a tractor at their residence. That tractor appears to have been the 4040 John Deere Tractor which was previously sold by the Trustee. Lory Nagel identified her divorce decree, and it was noted that the 2012 divorce decree does not list the 4010 or the 4020 John Deere Tractors. Because assets, such as the tractors, would have increased the amount Lory Nagel would have received in the property settlement, if she thought they were owned by Greg Nagel, she had every incentive to insist that those tractors be listed. The only tractor listed in the divorce documents was the 4040 John Deere Tractor.

Lory Nagel was shown the "receipt" for the 4020 John Deere Tractor. [Pl. Ex. 14]. She stated that the writing looked like her ex-husband's handwriting. Greg Nagel testified that it was not his handwriting or signature, and Gary Nagel testified that it did not look like his brother's signature. The court finds Lory Nagel's testimony more credible, and consistent with strong similarities between other examples of the handwriting and signatures of Greg Nagel and the handwriting and signature on Exhibit 14.

The "receipt" for the 1969 JD 4020 Tractor is not a model of clarity. The "name" listed is Greg Nagel, but there is no indication as to whether he is buyer or seller. At the bottom is a signature line underneath "RECEIVED BY". While it would seem more natural for "RECEIVED BY" to refer to the item that was sold, conceivably it could refer to the monies that were purportedly

6

being paid for the tractor. The signature itself is not clear, and the first name could be intended to be either Greg or Gary Nagel. [*Id.*]. However, there is nothing to suggest that it is actually Gary Nagel's signature. The signature bears no resemblance to any of his signatures found on various exhibits, even though Gary Nagel's signature is somewhat inconsistent.

The date on the "receipt" is "11-20-2010". Greg Nagel's 2010 tax return lists a "1960 JD 4020 Tractor" at the bottom of Exhibit 17, p. 17-22. The "price" for the 4020 John Deere on both the "receipt" and in the Form 4562 attached to the 2010 tax return is $14,000. The 4020 John Deere Tractor was to be depreciated over a 7 year term. [Pl. Ex. 12, p. 12-40]. The discrepancy in the year of the tractor's manufacture ("1960" instead of "1969") appears to be a typographical error. Testimony was presented that 4020 John Deere Tractors were not manufactured until after 1960, and that the 4020 in issue was manufactured in 1969. [Pl. Ex. 9; Testimony of Brent Wilson].

The 4010 John Deere Tractor does not appear on the Form 4562 filed with Greg Nagel's 2010 tax returns. It is listed, for the first time, on the 2011 Form 4562. Under the column heading "Date In Service", the Form 4562 states "12/7/11". The tractor is described as a "1961 410 Tractor". The year is the correct year for the manufacture of the 4010 tractor in issue, but one of the "zeroes" is left off the model number on the Form 4562.[4] The full listed value of the 4010 John Deere Tractor, $10,000, was deducted on the Form 4562 under "Section 179". [Pl. Ex. 17, p. 17-22].

In testimony, the 4010 John Deere Tractor was described as underpowered for the amount of farm work that needed to be done on a farm operation the size that Greg Nagel had. Further, there was credible testimony that the 4010 John Deere had been restored in 2005 and was, at all relevant times, a "show tractor". Even if the court were to find that the 4010 John Deere tractor had been

---

[4]/ John Deere did make a model 410, but it was a backhoe, not a tractor.

transferred to Greg Nagel, a "show tractor" would not appear to be a properly deductible expense item for Debtor's farming operation.

There is no evidence, other than Greg Nagel's tax returns, showing that the 4010 John Deere was ever transferred from Gary Nagel to Greg Nagel. While there were several aspects of Gary Nagel's testimony that the court did not believe, his testimony about what the old family tractor meant to him, what he did to obtain it, how he restored it, and how he has shown the tractor at local fairs were all credible. The idea that he would sell the 4010 John Deere Tractor to his brother seems highly unlikely.

There was also a lack of corroborating evidence regarding the alleged sales of the 4020 and 4010 tractors:

- There was no paperwork introduced related to the alleged transfer of the 4010 John Deere Tractor.

- No transfer of funds were reflected in the bank account information for Greg and Lory Nagel (or separate accounts of Greg Nagel) during the relevant time periods. [Def. Exs. G, H, I, J, K, N & O].

- Lory Nagel testified that there was only one tractor on the property where she lived with Greg Nagel. [Pl. Ex. 15, p. 12].

- The Divorce Decree does not reflect the 4010 or the 4020 John Deere Tractors. [Pl. Ex. 11-1 (Whalen list, dated Nov. 15, 2012); Def. Ex. F (attached Ex. D)].

While tax returns can be powerful evidence, in this case we have: 1) a Debtor who has admitted to other instances of signing documents containing false information, and, 2) the Debtor monetarily benefitting from the claimed deductions for the two tractors on his federal tax returns.

## LAW AND ANALYSIS

Property of the estate includes "all legal or equitable interests of the debtor in property at the commencement of the case." *See*, 11 U.S.C. §541(a)(1); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203, 103 S. Ct. 2309, 2312, 76 L. Ed. 2d 515 (1983); *French v. Frey (In re Bergman)*, 467 F.3d 536, 538 (6th Cir. 2006); *Bailey v. Suhar (In re Bailey)*, 380 B.R. 486, 490 (6th Cir. BAP 2008).

Unless a federal interest is at issue, property interests are created and defined by state law. *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 918, 59 L. Ed. 2d 136, 141-142 (1979).

In determining whether something is property of the bankruptcy estate, a court must look to both state and federal law. A debtor's property rights are to be determined under state law, while federal bankruptcy law applies to establish the extent to which those rights are property of the estate.

The Complaint seeks turnover[5] of the two tractors in order to sell them. [Doc. #1, p. 2.] In this case, one of the elements that the Trustee has the burden of proving is that the two tractors were property of the Debtor's estate. *See*, *Turner v. Avery*, 947 F.2d 772, 774 (5th Cir. 1991)(burden of proof on the trustee in a turnover action); *Rex-Tech. Int'l, LLC v. Rollings (In re Rollings)*, 451 F. App'x 340, 345 (5th Cir. 2011)(holding the burden of proof in a bankruptcy court action for declaratory relief as to the ownership of disputed property was on the party making an affirmative claim for relief); *United States v. Chalmers (In re Wheeler)*, 252 B.R. 420 (W.D. Mich. 2000); *Matter of Alofs Mfg. Co.*, 209 B.R. 83, 89-90 (Bankr. W.D. Mich. 1997)("It is well established that the burden of proof is on the party seeking turnover of property of the estate").

The ownership issues here are made a bit more difficult because tractors are not title

---

[5]/ Section 542(a) requires that an entity in possession of property "that the trustee may use, sell, or lease under section 363" must deliver that property to the trustee.

15-03106-jpg    Doc 47    FILED 08/12/16    ENTERED 08/12/16 16:43:35    Page 9 of 11

vehicles. Ohio law provides that no person shall sell or otherwise dispose of a motor vehicle without delivering to the buyer or transferee a certificate of title with an assignment on it to show title in the buyer or transferee. *See*, O.R.C. §4505.03. However, under the definitional section for motor vehicles, "farm machinery" is not a "motor vehicle". *See*, O.R.C. §4501.01(B) & (U). The testimony at trial also reflected the parties' understanding that the two tractors in issue would not have titles.

The problem with the "receipt" for the John Deere 4020 tractor is encompassed in the Latin phrases: *qui non habet, ille non dat*, or more popularly in legal circles, *nemo dat qui non habet*. These legal maxims can be translated as "he who has not, does not give"[6] and "nothing can confer what it does not possess".[7] Perhaps more to the point here, these legal maxims essentially provide that you cannot transfer property that you do not own. *See e.g.*, *KMAG Holdings Group, Inc. v. J. Phillip Chubb Ins. Agency*, 2016 WL 815604 at *3, 2016 U.S. Dist. LEXIS 26030 at *9 (N.D. Ohio March 2, 2016)("[I]t is axiomatic that an owner cannot transfer to a purchaser that which it does not own."); *In re Duke Roofing Co.*, 47 B.R. 990, 992 (E.D. Mich. 1985). This general principle is codified in the Uniform Commercial Code provision, UCC 2-403, adopted in Ohio as O.R.C. §1302.44(A)(1)(" A purchaser of goods acquires all title which the transferor had or had power to transfer . . .").

The court finds that the receipt [Pl. Ex. 14] was not signed by Defendant, nor does it appear to be in his handwriting. Instead, the handwriting appears to be that of the Debtor, and the signature, at the bottom of the receipt, appears to have been made by Greg Nagel. But, Greg Nagel would not

---

[6]/ *In re Duke Roofing Co.*, 47 B.R. 990, 992 (E.D. Mich. 1985).

[7]/ *City of Chicago v. Morales*, 527 U.S. 41, 91 n. 9, 119 S.Ct. 1849, 1876 n. 9, 144 L.Ed.2d 67, 102 n. 9 (1999)(Scalia, J., dissenting); *United States v. Harris*, 246 F.3d 566, 575 (6th Cir. 2001).

have any ability to transfer Gary Nagel's tractor to Greg Nagel. For Greg Nagel, "all title which the transferor had or had power to transfer" would be "none" for the two tractors in issue, based on the evidence presented at trial.

Similarly, the Debtor claiming a tax deduction for depreciation of two tractors he did not own would not transfer an ownership interest in the two tractors from Gary Nagel to Greg Nagel. Based upon Debtor's history of false statements and less-than-convincing explanations, the evidence that relies upon Greg Nagel's actions, statements, and writings is insufficient to meet the Trustee's burden of proof that the two tractors were actually transferred, at some point prior to the filing of Debtor's Chapter 7 bankruptcy case, to the Debtor, Greg Nagel. The court so finds, even given Gary Nagel's failure to provide a copy of his Form 4562, with his 2011 tax return, in response to the Trustee's discovery request.

Accordingly, for the reasons set forth above,

**IT IS ORDERED** that the relief sought under the remaining issues in the Trustee's Complaint [Doc. #1] be, and is hereby, **DENIED**; and

**IT IS FURTHER ORDERED** that judgement in favor of Defendant Gary Nagel will be entered by a separate Judgment.

# # #